# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2015

Lyle W. Cayce
Clerk

No. 14-30888

LLOYD'S SYNDICATE 1861; D&B BOAT RENTALS, INCORPORATED,

     Plaintiffs - Appellants

v.

CROSBY TUGS, L.L.C.,

     Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-5551

Before DAVIS and CLEMENT, Circuit Judges, and ROSENTHAL, District Judge.*

PER CURIAM:**

Plaintiffs – Appellants, D&B Boat Rentals Inc. and its insurer, Lloyd's Syndicate 1861, (collectively referred to as "D&B"), sued Defendant Crosby Tugs, L.L.C. ("Crosby"), seeking to recover the expenses they incurred in removing their sunken vessel, M/V RICKY B, from the bottom of the Gulf of

_____

\* District Judge of the Southern District of Texas, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30888

Mexico. Following a bench trial, the district court entered a judgment in favor of Crosby. We affirm the court's judgment.

**I.**

During the night of May 28, 2013, the RICKY B, while servicing drilling platforms in the Gulf of Mexico, began taking on water in its engine room through its starboard stuffing box. On the morning of May 29, after several attempts to stop the ingress of water, the RICKY B contacted Crosby for assistance. The RICKY B had lost power and its crew was abandoning ship. Crosby agreed to dispatch a tug to tow the RICKY B to shore. Several hours later, Crosby's tug, M/V DELTA FORCE, arrived at the scene and observed that the RICKY B had a list to port and was sitting low in the water. Following the owner and operator's instructions, the DELTA FORCE attached a tow-line, without attempting to pump out the water in the RICKY B, and began towing the vessel to shallower waters at a speed of no more than five knots. After proceeding approximately thirteen miles, the RICKY B completely submerged and came to a rest on the bed of the Gulf of Mexico.

D&B filed suit against Crosby alleging that the DELTA FORCE negligently towed the RICKY B without pumping the water out first and at too high a rate of speed, which caused the RICKY B to sink. After conducting a bench trial, the district court found that D&B presented insufficient evidence to establish that Crosby acted with either negligence or gross negligence and entered a take nothing judgment in favor of Crosby. In reaching its judgment, the district court held that: (1) the nature of the services provided by Crosby were salvage, not towing; (2) the damage ultimately suffered by the RICKY B was indistinguishable from the purpose of the salvage operation (sinking), and, therefore, a gross negligence standard applied in determining Crosby's liability; (3) even if the court applied an ordinary negligence standard, D&B presented insufficient evidence of Crosby's negligence; and (4) the

2

No. 14-30888

*Pennsylvania* Rule required D&B to show that the statutory violations of the RICKY B were not the cause of the accident.

## II.

On appeal, D&B first argues that the district court erred in concluding that the services provided by Crosby were salvage in nature and not towing. Next, D&B argues that regardless of the type of services provided by Crosby—towing or salvage—the ordinary negligence standard applies; thus, the district court erred in applying a gross negligence standard. D&B also argues that the district court erred in finding that the evidence was insufficient to establish Crosby's negligence under an ordinary negligence standard. Finally, D&B challenges the district court's application of the *Pennsylvania* Rule.

After a careful review of the record and consideration of the briefs, we are not persuaded that the district court erred in finding that the evidence was insufficient to establish that Crosby was negligent in rendering aid to the RICKY B. The record supports the district court's conclusion that Crosby did not owe a duty to pump water from the RICKY B before towing it. Michael Donner of Louisiana Marine Operators—the company that operated the RICKY B—testified that he instructed the crew of the DELTA FORCE to "absolutely not" attempt to pump water from the RICKY B due to its perilous condition. Thus, the district court's finding that Crosby had no duty to pump water before towing the RICKY B was not erroneous.

Similarly, we agree that D&B failed to establish by a preponderance of the evidence that towing the RICKY B at a speed of no more than five knots contributed to its sinking. Neither of D&B's experts testified that five knots was an unsafe speed to tow the RICKY B. Although there was conflicting evidence on whether towing the vessel at this speed was a cause of the accident, the district court resolved this dispute in favor of Crosby, and we cannot say its determination was erroneous.

No. 14-30888

Because D&B argues that the ordinary negligence standard applies to both salvage and towing operations and we have determined that the district court did not err in finding that Crosby did not act negligently, we need not address whether the district court properly characterized the arrangement between D&B and Crosby as salvage or towing. Similarly, because the district court ruled that Crosby was not liable under ordinary negligence standards, we need not address the correctness of the district court's finding that the gross negligence standard applied to the damage to the RICKY B.

Finally, D&B argues that the district court improperly applied the *Pennsylvania* Rule in this case. The *Pennsylvania* Rule creates a rebuttable presumption of causation against an entity involved in a maritime accident, if that entity is in violation a maritime rule or regulation intended to prevent that type of accident.[1] However, the district court found no breach of duty by Crosby. The effect of the *Pennsylvania* Rule in this case, if applicable, would have only helped Crosby in establishing comparative negligence on D&B. Because the court found no fault on Crosby, the *Pennsylvania* Rule had no effect on the outcome.

## III.

For the above reasons and the reasons assigned by the district court in its thorough opinion, we affirm the judgment of the district court.

AFFIRMED.

---

[1] *See Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1472 (5th Cir. 1991).